**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

**HONORABLE CORMAC J. CARNEY, JUDGE PRESIDING**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) SACR NO. 22-00030-CJC |
| | ) |
| MESHACH SAMUELS, | ) |
| | ) |
| DEFENDANT. | ) |
| _____ | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

MONDAY, OCTOBER 23, 2023

10:23 A.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(657) 229-4305**
**transcripts@ddparker.com**

```
APPEARANCES OF COUNSEL:

     FOR THE PLAINTIFF, UNITED STATES OF AMERICA:

                         E. MARTIN ESTRADA
                         UNITED STATES ATTORNEY

                         MACK E. JENKINS
                         ASSISTANT UNITED STATES ATTORNEY
                         CHIEF, CRIMINAL DIVISION

                         RACHEL AGRESS
                         ASSISTANT UNITED STATES ATTORNEY
                         UNITED STATES DISTRICT COURT
                         312 NORTH SPRING STREET
                         SUITE 1200
                         LOS ANGELES, CALIFORNIA 90012
                         (213) 894-0487
                         rachel.agress@usdoj.gov


     FOR THE DEFENDANT, MESHACH SAMUELS:

                         VICTOR SHERMAN
                         LAW OFFICES OF VICTOR SHERMAN
                         11400 WEST OLYMPIC BOULEVARD
                         SUITE 1500
                         LOS ANGELES, CALIFORNIA 90064
                         (424) 371-5930
                         victor@victorsherman.law
```

|   |   |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA; MONDAY, OCTOBER 23, 2023; 10:23 A.M.** |
| 2 | -o0o- |
| 3 | THE COURT:  Good morning. |
| 4 | THE CLERK:  Calling Calendar Item No. 2, |
| 5 | SACR 22-30, United States of America versus Meshach Samuels. |
| 6 | Counsel, please state your appearances. |
| 7 | MS. AGRESS:  Good morning. |
| 8 | Rachel Agress for the United States. |
| 9 | MR. SHERMAN:  Good morning, Your Honor. |
| 10 | Victor Sherman for Mr. Samuels, who is present. |
| 11 | THE COURT:  Hello, Mr. Samuels.  Hello, |
| 12 | Mr. Sherman.  Hello, Ms. Abrams. |
| 13 | We're here for the sentencing of Mr. Samuels. |
| 14 | I've reviewed the presentence investigation report.  I've |
| 10:40:07 15 | reviewed the parties' position papers. |
| 16 | What I'd like to do is share with you the |
| 17 | guideline range analysis that I've done, as well as the 3553 |
| 18 | analysis; and then, I'd like to hear from everybody.  I |
| 19 | haven't made up a final decision on what the appropriate |
| 10:40:30 20 | sentence is in this case. |
| 21 | Mr. Sherman, before I get too far down the line, |
| 22 | though, I want to confirm with you that you've had an |
| 23 | opportunity to review the presentence investigation report |
| 24 | with Mr. Samuels. |
| 10:40:39 25 | MR. SHERMAN:  Yes, I have, Your Honor. |

*Deborah D. Parker, U.S. Court Reporter*

10:40:40   1          THE COURT:  Terrific.

2          All right.  Well, the calculation of the offense

3     level in this case is a little complicated because of the

4     grouping of the counts, so I'll try to get through this

10:40:55   5     quickly; but, hopefully, it's understandable.  There's

6     Counts One and Two that are grouped, the felon-in-possession

7     counts, and I calculated the total offense level for those

8     as 24.  There was a base offense level of 22, pursuant to

9     Section 2K2.1(a)(3).  I adopted the findings and analysis of

10:41:22  10     paragraphs 54 through 60 of the presentence investigation

11     report and agree with the parties that 22 is the correct

12     base offense level for these counts, because Mr. Samuels

13     possessed a semi-automatic firearm, a Glock 19X pistol that

14     was capable of accepting a large-capacity magazine and he

10:41:45  15     the possessed the firearm after being convicted of a crime

16     of violence:  Aggravated battery against a police officer.

17          Then I increased the base offense level for these

18     two counts for having three to seven firearms, pursuant to

19     Section 2K2.1(b)(1)(A).  I increased it by two levels.  I

10:42:08  20     adopted the findings and analysis of Paragraph 61 of the

21     presentence investigation report and agree with the parties

22     that this offense characteristic applies because Mr. Samuels

23     possessed six firearms.  That, I believe, is the correct

24     offense level for Counts One and Two.

10:42:29  25          Then turning separately to Count 3, the conspiracy

*Deborah D. Parker, U.S. Court Reporter*

10:42:33  1    to commit bank fraud, I calculated the total offense level

2    for that offense at 27.  There was a base offense level,

3    pursuant to Section 2B1.1(A)(1), of 7 levels.  I adopted the

4    findings and analysis of Paragraph 66 of the presentence

10:42:55  5    investigation report and agree that 7 is the correct base

6    offense level, because bank fraud was the substantive

7    offense involved in the conspiracy.

8         I increased the base offense level by 14 levels,

9    because the intended loss was greater than $550,000 and less

10:43:17  10    than $1.5 million, pursuant to Section 2B1.1(b)(1)(H).  I

11    adopted the findings and analysis of Paragraphs 67 through

12    70 of the presentence investigation report and agree with

13    the parties that this offense characteristic applies,

14    because the intended loss of Mr. Samuels' fraud was

10:43:39  15    $1,256,664.18.

16         Then I increased the offense level for this count

17    by two levels because 10 or more victims through mass

18    marketing was involved pursuant to Section 2B1.1(b)(2)(A).

19    I adopted the findings and analysis of paragraphs 71 through

10:44:07  20    76 of the presentence investigation report and agree with

21    the parties that this offense characteristic applies because

22    Mr. Samuels defrauded more than 10 victims and used the

23    Instagram platform to solicit and induce people to steal

24    money through check and bank fraud.  I increased the offense

10:44:28  25    level for this count by two more levels, pursuant to

*Deborah D. Parker, U.S. Court Reporter*

10:44:31    1    Section 2B1.1(B)(10)(C), as sophisticated means were used.

2    I adopted the findings and analysis of paragraphs 77 through

3    79 of the presentence investigation report and agree with

4    the parties that this offense characteristic applies because

10:44:52    5    Mr. Samuels' fraud involved numerous transactions to avoid

6    reporting requirements, stolen identities, third-party

7    runners disguised in medical scrubs and the employee of a

8    bank with access to his account holders' personal

9    identifying information.

10:45:10   10        Then I increased the offense level for this count

11    by two more levels for use of identification to obtain other

12    identification.  I adopted the findings and analysis of

13    paragraphs 80 through 84 of the presentence investigation

14    report and agree with the parties that this offense

10:45:30   15    characteristic applies, because Mr. Samuels used the

16    victims' personal identifying information to obtain bank

17    account numbers for them.  If my math is correct, then the

18    total offense level for this Count Three is 27.

19        Then I take the higher offense level, which is the

10:45:57   20    Count Three bank fraud of 27, and I increase that by two

21    levels for the multi-count adjustment, pursuant to

22    Section 3D1.4.  I adopted the findings and analysis of

23    paragraphs 89 through 92 of the presentence investigation

24    report and agree that the offense level for this count

10:46:21   25    increased by two levels because the total number of units

*Deborah D. Parker, U.S. Court Reporter*

10:46:24  1    for all counts is two units.

2              Then I decreased the offense level by three levels

3    for Mr. Samuels' acceptance of responsibility, pursuant to

4    Section 3E1.1.  I agree with Probation and the parties that

10:46:43  5    Mr. Samuels is entitled to a three-level downward adjustment

6    in his offense level for accepting responsibility and timely

7    pleading guilty to all three counts.

8              With the offense level calculated at a total of

9    26, then I turn to the Criminal History Category, and I

10:47:05  10   agree with Probation and the parties that Mr. Samuels is in

11   Criminal History Category III.  He has five points.  There

12   are three points assessed for a 2016 aggravated battery

13   against a police officer conviction and then two points were

14   assessed for a 2020 conviction for possession of a firearm.

10:47:31  15            With an offense level of 26 and a

16   Criminal History Category III, then the sentencing guideline

17   range is 78 to 97 months.  So that's my guideline range

18   analysis.

19             I then turn to what we call the 3553 analysis.

10:47:51  20   And, Mr. Samuels, you may recall from your change of plea,

21   sir, that after I've calculated the guideline range, I then

22   got to apply and consider those very important factors and

23   objectives of sentencing under that federal sentencing

24   statute 18 U.S.C. Section 3553.  You may recall, sir, under

10:48:10  25   that statute I have to look at the nature and circumstances

10:48:15  1    of your offenses, your unique history and personal

2    characteristics, try to identify anything aggravating or

3    mitigating.  I need to make sure that any sentence I

4    impose reflects the seriousness of the offense, promotes

10:48:30  5    respect for the law and provides just punishment.  I need to

6    make sure that the sentence will deter you and others from

7    engaging in the criminal conduct.  I need to make sure that

8    the sentence protects the public from any further crimes you

9    might commit.  I need to provide you with needed educational

10:48:47 10    or vocational training, medical care, other correctional

11    treatment in the most effective manner.  I need to avoid

12    unwarranted sentencing disparities among people who have

13    been similarly convicted and sentenced for those types of

14    offenses and then I need to provide restitution to any

10:49:02 15    victims of the offense.

16          So with that, sir, I first try to look at what you

17    did here in your life and try to identify any aggravating or

18    mitigating facts and circumstances.  I identified several

19    mitigating factors and I identified what I will call two

10:49:22 20    aggravating factors.  The mitigating factors is:

21    Mr. Samuels does come from a disadvantaged youth that cannot

22    be overstated.  His parents were not married.  They were

23    separated.  And his mother, at a very young age, was

24    deported, I believe, because she got herself -- got herself

10:49:46 25    in trouble with the law.

10:49:48  1        There was a period of time where Mr. Samuels was

2    at juvenile hall and that was not a good experience that

3    improved him by any means.  Once he got out of there, then

4    he lived in a gang neighborhood and was impacted by the

10:50:07  5    criminal activity and the drugs associated with the gangs.

6    Related to this, he has a substance abuse problem.  He has

7    used marijuana frequently since at the young age of 12 years

8    old.  And starting at -- when he was 18, he was using

9    Percocet, Mollys and Ecstasy.  And then I also noticed that

10:50:34 10    in the record, Mr. Samuels does have a mental health issue

11    that he needs treatment and care for; specifically, ADHD.

12        Those are the mitigating facts and circumstances.

13    The troubling facts and circumstances I think are

14    self-evident and evidenced and taken into account pretty

10:50:55 15    much by this guideline range, but it's the troubling fraud

16    causing severe distress and financial loss to people.  And

17    then I was also troubled to see that Mr. Samuels, even when

18    he was arrested and in custody, he attempted to communicate

19    with certain participants involved in the fraud.  So that's

10:51:21 20    the 3553 analysis I did.  Again, I was looking forward to

21    hearing from everybody of what they thought of the

22    sentencing guideline analysis I did, this preliminary

23    3553(a) analysis and how the other factors come into play

24    and what the appropriate sentence is.

10:51:42 25        Ms. Agress, can I hear from you first, please?

*Deborah D. Parker, U.S. Court Reporter*

10:51:45  1          MS. AGRESS:   Sure, Your Honor.

2          So with respect to the guidelines range, the

3     Government agrees with the Court that it's reflective of the

4     conduct in this case, which is why the Government believes

10:51:54  5     that a guideline sentence squarely within the guidelines is

6     appropriate.

7          The Government would point out a couple additional

8     points for the Court.  First of all, the damages -- the

9     actual damages that the Government was able to calculate in

10:52:07 10     this case relate only to specific checks or receipts that

11     were found in defendant's house on the day of the warrant.

12     And so the Government believes that in this case -- while in

13     some cases the intended loss may be larger than what the

14     Court believes is representative, here the Government

10:52:26 15     believes that appropriate amount to consider here is the

16     intended loss, because there is a universe full of losses

17     that the Government just could not calculate in this case.

18     And to give the Court an inkling, when the Government

19     searched defendant's house, there were hundreds of stolen

10:52:44 20     checks in the house that have not been included in the

21     guidelines.  We agree that it's not appropriate here,

22     because what the defendant was doing was taking checks and

23     washing them and so there was no -- that amount on the

24     stolen checks would not be reflective what the intended loss

10:52:58 25     would be and there was no way for the Government to

*Deborah D. Parker, U.S. Court Reporter*

10:53:00  1   calculate that.  But those checks are reflective of the size

2   and scope of the scheme here and that's why the intended

3   loss amount is representative of the offense that took place

4   here and not just the actual loss.

10:53:12  5        The second thing the Government will point out is

6   that Counts One and Two, while grouped, reflect conduct on

7   two separate dates that were spaced apart by a span of

8   months, and the defendant didn't learn his lesson.  There

9   wasn't just two arrests -- there wasn't just one arrest

10:53:28 10  here; there were two arrests.  There was a state arrest and

11   then the Government adopted that case.  That was a gun

12   arrest in August.  And then after that, subsequently, the

13   defendant was in March 2022 in possession of the additional

14   firearms.  And then after the federal arrest, the defendant

10:53:45 15  continued to make calls while in custody.

16        And so the defendant has had a number of chances

17   here and has not been deterred by multiple encounters with

18   law enforcement, and that's not considering the criminal

19   history where he did previously serve a significant sentence

10:54:00 20  for a very significant violent offense against

21   law enforcement.

22        And so the Government maintains that given all

23   those aggravating factors, a very significant sentence here

24   is appropriate.  The Government does not want to minimize

10:54:15 25  the mitigating factors which the Court pointed out as well

*Deborah D. Parker, U.S. Court Reporter*

10:54:19  1   as the acceptance -- the early acceptance of responsibility

2   pre-indictment, which is significant.  And so weighing all

3   those factors, that's why the Government believes a

4   mid-guidelines range is appropriate in this case.

10:54:30  5             Thank you, Your Honor.

6             THE COURT:  I appreciate your thoughts.

7             Mr. Sherman?

8             MR. SHERMAN:  Your Honor, obviously it's a

9   difficult case.  It's difficult in the sense that -- I'm

10:54:45 10   glad I was born where I was born, to tell you the truth.

11   And where he was born and the life he went through, I can't

12   even really imagine.

13             This was a person that was -- three days after he

14   was 18 years old went to prison.  Obviously, he did wrong,

10:55:00 15   but he's never had a real chance in his life to ever do

16   things right.  He's never had some mentor or some parent to

17   teach him the right ways to act.  He's in a gang at 12 years

18   old.  He did pull himself out of the gang, so he showed some

19   maturity at a young age, but his life has been a mess.  And

10:55:24 20   he's really never had any motivation to do things right.

21             Looking from the outside, we're saying, *Well, it's

22   *your fault.*  I don't know.  Maybe it is his fault.  And in

23   some sense, it is his fault, but he hasn't had the

24   opportunity many people in society have had.  So now we find

10:55:45 25   ourselves -- he's now 26 years old.  He can either be a

*Deborah D. Parker, U.S. Court Reporter*

10:55:50  1    criminal the rest of his life and spend the rest of his life

2    in jail or go into a different direction.

3           When I first saw him in jail, I told him honestly,

4    I said, *You know, Mr. Samuels, there's very little I can do*

10:56:02  5    *with you in this case.  They have you dead to right.  You*

6    *have a bad record.  You've been in jail most of your life,*

7    *since you were 18.  You're going to have to change your life*

8    *or there's no hope for you.*

9           And I said to him, *Think about things.  Think*

10:56:19 10    *about your life.  What do you want?  What means something to*

11    *you?  When will you learn that you have to play by society's*

12    *rules?  You can't just abandon yourself and commit these*

13    *crimes and not care.*

14           I think I had an impact.

10:56:38 15           THE COURT:  I think you did, too.

16           And since we're being very candid, I thought his

17    letters he submitted and the evidence you -- it was

18    encouraging that he's trying to get on that road.  I take

19    him at his word.  He had enough detail that convinced me.

10:57:00 20    And I don't think I'm telling you anything different, but I

21    am certainly, hopefully, telling Mr. Samuels.  But not your

22    intervention, his acceptance of responsibility and you

23    presenting all this evidence, we'd be talking about an

24    upward departure.  And we're sitting, talking about a

10:57:21 25    guideline case.  But this case has very many aggravating

10:57:24  1   facts and circumstances, and I don't have off the top of me

2   [sic] what's the statutory maximum, but I assume it's at

3   least 20 years.

4           Isn't it, Ms. Agress?

10:57:34  5           MS. AGRESS:  If you'll give me a moment,

6   Your Honor.  I just don't want to misquote, but I don't have

7   it in front of me.

8       *(Pause)*

9           MR. SHERMAN:  It's a lot.

10:57:48  10          THE COURT:  It's a lot.  And I'm not -- I'm not

11  trying to curry your favor.  You've done an exceptional job

12  for him.  This is very aggravating.  And then I am troubled

13  by the criminal history, particularly dragging a police

14  officer in a car.  That's traumatic.

10:58:10  15          MR. SHERMAN:  And I was troubled, too.  You know,

16  I'm going to show you -- I got this from his -- the mother

17  of his child.  It's a little handprint.  And this -- when I

18  showed it to him today, this is the first time he saw it.

19  It's the first time I've seen him smile in a long time.  He

10:58:30  20  has now somebody to care about.  And I honestly believe he

21  cares about this child.

22          You know, I'm praying that Mr. Samuels knows now

23  that if he doesn't want to spend the rest of his life in

24  jail, he's got to do the right things.  The prosecutor said

10:58:50  25  something to me at the very beginning of this case which I

10:58:52  1    think is very true.  She said to me, *This is a smart guy.*
       2    *And if he would use his brains in the right way, he could be*
       3    *a successful person.*  And I think she was right.  And I
       4    think she recognized that this scheme that he did,
10:59:07  5    obviously, in the wrong way, showed ingenuity on his part.
       6              THE COURT:  Sophistication, absolutely.
       7              MR. SHERMAN:  You know, he's got a brain.  He's
       8    not this stupid guy, but he's acted -- his whole life has
       9    been stupid, and it's just -- it's such a shame that
10:59:31 10    somebody at the age of 12, when he gets into a gang, that
      11    somehow society couldn't intervene to put him on the right
      12    path.  I don't blame society.  But his mother wasn't there.
      13    His father wasn't there.  He had nobody to help him.
      14              So I do believe in his own mind he knows he can do
10:59:52 15    the things right.  And he knows now that he doesn't want his
      16    daughter to grow up, like he grew up without anybody to love
      17    him and to point her in the right direction.  I can only ask
      18    for more leniency on the part of the Government, on the part
      19    of your government.
11:00:10 20              The Government and I worked together on this case.
      21    I think the Government was fair.  They're recommending
      22    87 months.  He's been in jail, as I said, from the age of 18
      23    to now.  He was out of jail for a year.  So in the last
      24    eight years, he's been out of jail one year.  I don't think
11:00:29 25    another seven years in jail is going to do any good.  I

11:00:32  1    mean, it will keep him out of the street.  And I suppose it

2    will protect society in some way, if we're really worried

3    about that.  I mean, he had these guns, but he didn't use

4    them violently.  It's just the culture.  And now he has got

11:00:50  5    to break that string.

6           And I would ask Your Honor, as I did in my papers,

7    give him five years.  I think that's enough.  I mean, an

8    extra two years on top of five years, what are we going to

9    accomplish?  You're just warehousing him.  Either he has

11:01:07 10    learned his lesson or he isn't [sic].

11           And unless you're totally concerned that he's

12    going to go out and hurt somebody, five years seems to be

13    plenty.  And that will mean by the time he's 30 years old or

14    31 or 32 years, he will have served most of his life -- his

11:01:24 15    adult life in jail.  I think he's worth it.  And, again,

16    when I first saw him the very first day, I said, *You got to*

17    *keep a diary.  Your only chance is, examine your life.*

18           I think he did.  Thank you.

19           THE COURT:  I appreciate your words, and I also

11:01:43 20    appreciate your zealous advocacy for him.

21           MS. AGRESS:  Your Honor, just to answer your

22    question, the statutory maximum in total is 50 years.

23           THE COURT:  50 years.

24           Mr. Samuels, at this hearing, you have a right to

11:01:59 25    say anything you would like to say to me.  I have read your

| | |
|---|---|
| 11:02:04 | 1 |

letters; but I don't know if there's anything else you would
like to reiterate, or if you want to say.  You don't have to
speak, sir, but you have a right to do so.

Is there anything you like to say?

DEFENDANT SAMUELS:  Yes, Your Honor.

First, I just would like to apologize to my
victims.  I mean, as time did weigh a lot of me.  I had a
lot of time tooken from my life.

*(Pause)*

DEFENDANT SAMUELS:  I had a lot of time tooken
from my life.  And I just don't want my daughter to grow --
grow -- I just don't want my daughter to grow -- grow up --
I did a lot of things I regret.  If I can do it again, I'll
do it all over, but I accept full responsibility.  There's a
law.  I committed the crime.  But if I could take this time
to learn me a trade or something, then I'll be more than
happy to pay everybody back they restitution fees, but I
just --

My main object [sic] is to raise my little girl.
She don't deserve that.  She didn't ask to be here.  She's
an innocent girl.  And a lot of things I done wasn't because
I wanted to do it.  It wasn't done intentions.  It was what
I was left to.  It was just hard for me.  A lot of people
can't relate, if they haven't been down the path I been
down.

*Deborah D. Parker, U.S. Court Reporter*

11:04:03   1          I seen a lot of things.  I won't say the route I

2    took was the best route.  I could have been -- I could have

3    been a way worst journey.  And like I said, I want to

4    apologize to my victims.  It was my selfish ways and not

11:04:23   5    thinking for nobody.  I just thought how will I have my next

6    meal on the table, because I had nobody.

7          That's all I have to say, Your Honor.

8          THE COURT:  I appreciate your words.

9          Ms. Agress, is there anything further you would

11:04:37  10    like to respond to?

11          MS. AGRESS:  Your Honor, I just -- I just -- and

12    it's flagged in our papers.

13          I just need to note that there were a lot of

14    luxury items found in the house.  And so I just need to make

11:04:49  15    sure the record is straight that there were -- there was

16    cash.  There were high-end luxury items.  And much of the

17    proceeds were used to buy things that were not necessities,

18    so I just want the Court to have that clear understanding.

19          THE COURT:  Well, I do believe that whatever

11:05:10  20    sentence I impose in this case, Mr. Samuels is going to have

21    a life.  He's still going to be a relatively young man,

22    especially from my and Mr. Sherman's perspective.  And I do

23    have hope for him.  I'm not giving up on him, but I do

24    believe, in light of the very aggravating and troubling

11:05:37  25    nature of the offenses, that a significant prison sentence

11:05:43  1  is necessary to achieve just punishment, deterrence of him

2  and others and protection of the public, which are three of

3  the very important objectives of 3553.

4          So with that, I'm going to impose the sentence --

11:05:56  5  not a high end but a mid-guideline range recommended by the

6  probation office -- of 90 months.

7          I have the letter from Probation, recommending

8  that 90-month sentence and the terms and conditions of

9  supervised release.  It would be my intent to impose the

11:06:22  10  sentence as recommended.

11          Is there any legal reason why I cannot now impose

12  that sentence, Ms. Agress?

13          MS. AGRESS:  Nothing from the Government,

14  Your Honor.

11:06:32  15          THE COURT:  Mr. Sherman?

16          MR. SHERMAN:  No, Your Honor.

17          THE COURT:  It is ordered that the defendant,

18  Meshach Samuels, shall pay to the United States a special

19  assessment of $300, which is due immediately.  Any unpaid

11:06:41  20  balance shall be due during the period of imprisonment at

21  the rate of not less than $25 per quarter and pursuant to

22  the Bureau of Prisons' Inmate Financial Responsibility

23  Program.

24          It is further ordered that he shall pay

11:06:53  25  restitution in the total amount of $423,087.02, pursuant to

11:07:00  1   18 U.S.C. Section 3663A.  The amount of restitution ordered

2   shall be paid as follows:  To Citibank, in the amount of

3   $338,026.32; Wells Fargo, in the amount of $66,214;

4   California EDD, in the amount of $14,250; AR, in the amount

11:07:26  5   of $1,450; AD, in the amount of $145; JP, in the amount of

6   $300; NV, in the amount of $834.75; JC, in the amount of

7   $774; BR, in the amount of $29.95; SCH, in the amount of

8   $16; and ML, in the amount of $47.

9           The Court finds from a consideration of the record

11:08:01  10  that Mr. Samuels' economic circumstances allow for

11  restitution payments, pursuant to the following schedule:

12          Restitution shall be due during period of

13  imprisonment at the rate of not less than $25 per quarter

14  and pursuant to the Bureau of Prisons' Inmate Responsibility

11:08:18  15  Program.  If any amount of the restitution remains unpaid

16  after release from custody, monthly payments of at least

17  10 percent of his gross monthly income but not less than

18  $50, whichever is greater, shall be made during the period

19  of supervised release.  These payments shall begin 90 days

11:08:36  20  after the commencement of supervision.

21          If Mr. Samuels makes partial payment, each payee

22  shall receive approximately proportional payment, unless

23  another priority order or percentage payment is specified in

24  the judgment.

11:08:50  25          Pursuant to 18 U.S.C. Section 3612(f)(3)(A), the

11:08:54  1  interest on the restitution ordered is waived, because

2  Mr. Samuels does not have the ability to pay interest.

3  Payments may be subject to penalties for default and

4  delinquency, pursuant to 18 U.S.C. Section 3612(g).

11:09:13  5  Mr. Samuels shall comply with second-amended

6  General Order No. 20-04.  Pursuant to Guideline

7  Section 5E1.2(a), all fines are waived, as the Court finds

8  take Mr. Samuels has established that he isn't able to pay

9  and is not likely to become able to pay any fine.

11:09:32 10  Is there a preliminary order of forfeiture?

11  MS. AGRESS:  There is, Your Honor.

12  THE COURT:  The Court has found that the property

13  identified in the preliminary order of forfeiture is subject

14  to forfeiture.  The preliminary order is incorporated by

11:09:47 15  reference into this judgment and is final.

16  Pursuant to the Sentencing Reform Act of 1984,

17  it's the judgment of the Court, the defendant,

18  Meshach Samuels, is hereby committed on Count One, Two and

19  Three of the first superseding information to the custody of

11:10:03 20  Bureau of Prisons for a term of 90 months.  This term

21  consists of 90 months on each of Counts One, Two and Three,

22  with the first superseding information to be served

23  concurrently.

24  The Court recommends that the Bureau of Prisons

11:10:15 25  conduct a mental health evaluation of Mr. Samuels and

11:10:19  1  provide all necessary treatment to him.  Further, the Court

2  recommends that Mr. Samuels be considered for participation

3  in the Bureau of Prisons Residential Drug Abuse Program, the

4  RDAP program.

11:10:32  5          Upon release from imprisonment, Mr. Samuels shall

6  be placed on supervised release for a term of five years.

7  This term consists of three years on each of Counts One and

8  Two and five years on Count Three of the first superseding

9  information.  All such terms to run concurrently under the

11:10:51  10  following terms and conditions:

11          No. 1, he shall comply with the rules and

12  regulations of the United States Probation and Pretrial

13  Services Office and second amended General Order 20-04.

14          No. 2, during the period of community supervision,

11:11:03  15  he shall pay a special assessment and restitution in

16  accordance with this judgment's orders pertaining to such

17  payment.

18          No. 3, he shall cooperate in the collection of a

19  DNA sample from his person.

11:11:15  20          No. 4, he shall refrain from any unlawful use of a

21  controlled substance.  He shall submit to one drug test

22  within 15 days of release from custody and at least two

23  periodic drug tests thereafter, not to exceed eight tests

24  per month, as directed by the probation officer;

11:11:31  25          No. 5, he shall participate in an outpatient

11:11:34  1    substance abuse treatment and counseling program that

2    includes urinalysis, breath and/or sweat-patch testing, as

3    directed by the probation officer.  He shall abstain from

4    using alcohol, illicit drugs and from abusing prescription

11:11:47  5    medications during the period of supervision;

6            No. 6, he shall participate in mental health

7    treatment, which may include evaluation and counseling until

8    discharged from the program by the treatment provider with

9    the approval of the Probation Officer;

11:12:02  10           No. 7, as directed by the Probation Officer,

11   Mr. Samuels shall pay all or part of the costs of his

12   court-ordered treatment to the aftercare contractors during

13   the period of community supervision.  He shall provide

14   payment and proof of payment as directed by the

11:12:16  15   Probation Officer.  If he has no ability to pay, no payment

16   shall be required;

17           No. 8, Mr. Samuels shall not obtain or possess any

18   driver's license, Social Security number, birth certificate,

19   passport or any other form of identification in any name

11:12:32  20   other than his true legal name.  Nor shall he use any name

21   other than his true legal name without the prior written

22   approval of the Probation Officer;

23           No. 9, when not employed or excused by the

24   Probation Officer for schooling, training or other

11:12:47  25   acceptable reasons, he shall perform 20 hours of community

11:12:51  1   service per week as directed by the Probation or

2   Pretrial Services Officer;

3           No. 10, Mr. Samuels shall not be employed by,

4   affiliated with, own or control or otherwise participate

11:13:02  5   directly or indirectly in the conduct of the affairs of any

6   financial institution insured by the Federal Deposit

7   Insurance Corporation;

8           No. 11, Mr. Samuels shall not be self-employed nor

9   be employed in a position that does not provide regular pay

11:13:19 10   stubs with the appropriate deductions for taxes, unless

11   approved by the Probation Officer;

12           No. 12, Mr. Samuels shall apply all monies

13   received from income tax refunds, lottery winnings,

14   inheritance, judgments and any other financial gains to the

11:13:34 15   court-ordered financial obligation;

16           No. 13, Mr. Samuels shall submit his person,

17   property, house, residence, vehicle, papers, computers,

18   cell phones, other electronic communications or data storage

19   devices or media, e-mail accounts, social media accounts,

11:13:51 20   cloud storage accounts or other areas under his control to a

21   search conducted by United States Probation Officer or

22   law enforcement officer.  Failure to submit to a search may

23   be grounds for revocation.  He shall warn any other

24   occupants that the premises may be subject to searches,

11:14:07 25   pursuant to this condition.  Any search pursuant to this

11:14:10   1    condition will be conducted at a reasonable time and in a

2    reasonable manner upon reasonable suspicion that he has

3    violated a condition of his supervision and that the areas

4    to be searched contain evidence of this violation;

11:14:25   5           No. 14, Mr. Samuels shall not associate with

6    anyone known to him to be a member of the Brooklyn HQ

7    Monopoly, Bloods Set Gang and others known to him to be

8    participants in the Brooklyn HQ Monopoly, Bloods set gang's

9    criminal activities, with the exception of his family

11:14:44 10    members.  He may not wear, display, use or possess any gang

11    insignias, emblems, badges, buttons, caps, hats, jackets,

12    shoes or any other clothing that he knows the evidence

13    affiliation with the Brooklyn HQ Monopoly, Bloods Set gang

14    and may not display any signs or gestures that he knows

11:15:07 15    evidence affiliation with the Brooklyn HQ Monopoly,

16    Bloods set gang;

17           And No. 15, as directed by the Probation Officer,

18    Mr. Samuels shall not be present in this area known to him

19    to be a location where members of the Brooklyn HQ Monopoly,

11:15:21 20    Bloods set gang meet for assembly.

21           The Court authorizes the Probation and Pretrial

22    Services Office to disclose the presentence report to the

23    substance abuse treatment provider to facilitate

24    Mr. Samuels' treatment for narcotic addiction or drug

11:15:37 25    dependency.  Further, redisclosure of the presentence report

11:15:40   1   by the treatment provider is prohibited without the consent

2   of the Court.

3           The Court authorizes the Probation Officer to

4   disclose the presentence report and any previous mental

11:15:51   5   health evaluations or reports to the treatment provider.

6   The treatment provider may provide information excluding the

7   presentence report to state or local social service

8   agencies, such as the State of California, Department of

9   Social Services for the purposes of Mr. Samuels'

11:16:07  10   rehabilitation.

11           Mr. Samuels, there's one other item, sir, I must

12   discuss with you, and that is giving you the proper

13   advisement on your right to appeal.

14           Sir, you may recall in your plea guilty that you

11:16:20  15   gave up the right to set aside the convictions that resulted

16   from your guilty pleas, as well as to challenge the sentence

17   that I just imposed.  The appellate waiver in your plea

18   agreement said as long as I imposed a term of imprisonment

19   no more than 97 months and a guideline range, you would give

11:16:41  20   that up.  I've imposed a sentence below 97 months in your

21   case.

22           If you feel that those appellate waiver provisions

23   in your plea agreement, though, were unlawful -- they're not

24   right -- or if there's any right you preserve that's not

11:17:02  25   barred by these appellate waivers in your plea agreement,

| | |
|---|---|
| 11:17:04 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 11:17:19 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 11:17:33 | 10 |

11:17:04  1   you can file what we call a notice of appeal with the Court

2   above me called the Ninth Circuit.  Filing a notice of

3   appeal with the Ninth Circuit is not a difficult process;

4   you just ask Mr. Sherman for the form.  You sign the form,

11:17:19  5   and all your rights are preserved, as long as you do so

6   within 14 days.  If you wait longer than 14 days, sir, it's

7   too late.  They won't consider it.

8            Do you have any questions for me about filing a

9   notice of appeal?

11:17:33  10           DEFENDANT SAMUELS:  No, Your Honor.

11           THE COURT:  All right.  Is there anything further

12   we need to discuss?

13           MS. AGRESS:  Nothing from the prosecution,

14   Your Honor.

11:17:41  15           THE COURT:  Mr. Sherman?

16           MR. SHERMAN:  Your Honor, could the Court

17   recommend that he be incarcerated at a place closest to his

18   family in New York?

19           THE COURT:  I will make a strong recommendation

11:17:52  20   that Mr. Samuels be housed in the New York area to

21   facilitate visitation from family, friends and loved ones.

22           MR. SHERMAN:  Thank you.

23           THE CLERK:  Government Counsel, remaining counts?

24           MS. AGRESS:  No, because this was a superseding

11:18:08  25   information.

*Deborah D. Parker, U.S. Court Reporter*

11:18:08   1          THE CLERK:  Do you want to dismiss the other

2    counts?

3          MS. AGRESS:  There were no other counts.  It was a

4    one-count indictment and then the -- all the counts --

11:18:17   5          THE CLERK:  You still need to dismiss the one

6    before --

7          Just file something, if you're not going to do it

8    right now.

9          MS. AGRESS:  I dismiss any counts that he has not

11:18:23  10   pled to, but I don't believe there are --

11          THE COURT:  Yes, but there's the underlying --

12          MS. AGRESS:  Oh, the underlying indictment.

13   Understood.  Understood, yes.

14          We dismiss the underlying indictment.  Thank you.

11:18:34  15   We move to dismiss it, yes.

16          THE COURT:  And that's granted.

17          THE CLERK:  All rise.  This Court is in recess.

18          *(At 11:18 a.m., proceedings were adjourned.)*

19                         -oOo-

20

21

22

23

24

25

CERTIFICATE

          I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.

Date:  December 13, 2023

                              _____
                                   /s/DEBORAH D. PARKER
                              DEBORAH D. PARKER, OFFICIAL REPORTER

*Deborah D. Parker, U.S. Court Reporter*